UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,

v.

TONY ALLEN GREGG,

Petitioner.

Criminal Action No. 3:09-CR-180
Civil Action No. 3:12-CV-699

**MEMORANDUM OPINION**

THIS MATTER is before the Court on *pro se* Petitioner Tony Allen Gregg's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (ECF No. 76). For the reasons set forth below, the § 2255 Motion is DENIED.

I.  BACKGROUND

   a.  *Factual Background*[1]

In August 2008, Petitioner, Tony Allen Gregg ("Gregg" or "Petitioner"), agreed to cooperate with the Federal Bureau of Investigation ("FBI") after being caught for grand larceny, his 21st conviction. Defendant successfully cooperated for a period, but he then began selling drugs without the government's knowledge at least as early as January 2009.

On March 24, 2009, Detective Greg Russell of the Richmond Police Department detained Gregg outside the Deluxe Motel in relation to an investigation of an armed robbery. Suspecting drug activity, Detective Russell asked Gregg if he was carrying "anything . . . that shouldn't be there." Gregg admitted that he possessed drugs, and handed to Detective Russell a plastic bag containing about 3.57 grams of crack cocaine.

On May 12, 2009, the FBI and the Richmond Police Department were cooperating in an investigation of gang activity at the Deluxe Motel. During this investigation, an FBI informant

---

[1] The factual background is taken in part from the Fourth Circuit's opinion. *United States v. Gregg*, 435 F. App'x 209 (2011).

approached Gregg, who was present at the motel, in order to make a "controlled drug buy." At the time, Gregg had $900 in cash on his person but was not carrying any drugs. Therefore, the intended transaction did not take place.

The next day, Gregg was arrested on federal drug charges. Defendant admitted to police in a *Mirandized* confession that he began selling crack cocaine in March 2009, and that he had planned to sell the drug at the Deluxe Motel on March 24, 2009. Gregg also stated that he sometimes sold several "eight balls" in a day. Based on this representation, FBI Special Agent Umphlett calculated that between March 24, 2009 and May 12, 2009, Gregg sold about 514.5 grams of crack cocaine. (Trial Tr. at 173:4–174:1.)

### b. *Procedural Background*

On May 14, 2009, Gregg was arrested and charged via criminal complaint with possession with the intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1). (ECF Nos. 1, 2.) On June 2, 2009, the federal grand jury returned a one-count indictment charging Gregg with conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846. (ECF No. 8.)

A jury trial commenced on August 31, 2009. Gregg was represented by John Rockecharlie ("Rockecharlie").[2] The trial ended in a hung jury. (*See* ECF No. 25.) On October 29, 2009, a second jury trial commenced. The jury found Gregg guilty as charged in the indictment. (ECF No. 40.) On January 27, 2010, this Court sentenced Gregg under 21 U.S.C. § 841(b)(1)(A)[3] to the mandatory term of life imprisonment required by the statute for a third conviction of a felony drug offense. (ECF No. 43.) On February 11, 2010, the Court held a hearing on resentencing pursuant to Fed. R. Crim. P. 35(a)[4], where the Court resentenced Gregg to 300 months' imprisonment, based on a mistake in the Government's information listing Gregg's

---

[2] Rockecharlie's affidavit is attached to the Government's response. (Gov'ts Resp., attachment B.)
[3] 21 U.S.C. § 841(b)(1)(A) reads in part that "[i]f any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense which has become final, such person shall be sentenced to a mandatory term of life imprisonment."
[4] Rule 35(a) of the Federal Rules of Criminal Procedure permits a court "[w]ithin 14 days after sentencing" to "correct a sentence that resulted from arithmetical, technical, or other clear error."

prior convictions. (*See* ECF Nos. 48, 59.)[5] Defendant and the Government appealed. (ECF Nos. 55, 62.)

On June 17, 2011, the Fourth Circuit affirmed Gregg's conviction, but vacated the 300 month sentence imposed by this Court, and remanded the case for the district court to reinstate the mandatory minimum life sentence. *United States v. Gregg*, 435 F. App'x 209 (4th Cir. 2011).[6] On July 15, 2011, pursuant to the Fourth Circuit's mandate, this Court reinstated Gregg's life sentence. (ECF No. 74.) Thereafter, Gregg filed a writ of certiorari to the United States Supreme Court, which was denied on October 3, 2011. *Gregg v. United States*, 132 S. Ct. 327 (2011).

On October 3, 2012, Gregg filed the instant § 2255 Motion. In his § 2255 Motion, Gregg alleges two grounds for relief:

> Ground One: Ineffective assistance of counsel for trial counsel's failure to clarify to the jury that Gregg could not be convicted of conspiracy if his only co-conspirator was an undercover government agent
>
> Ground Two: Petitioner is entitled to a resentencing hearing subject to the Fair Sentencing Act and the holding in *Dorsey v. United States*, 132 S. Ct. 2312 (2012)

The United States filed a response in opposition on January 10, 2013 ("Gov'ts Resp.") (ECF No. 81),[7] and Gregg subsequently filed a reply on January 30, 2013 ("Reply Mem.") (ECF No. 83). The issue is now ripe for decision.

//

---

[5] The background leading up to the re-sentencing is as follows. Before trial, pursuant to 21 U.S.C. § 851, the government had filed informations notifying Gregg of two prior convictions of felony drug offenses that would subject him to a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A) in the event of a third conviction. (ECF Nos. 9, 15.) Gregg did not challenge the validity of these underlying convictions. However, after this Court sentenced Gregg, the Court informed counsel that one of the informations filed by the Government contained two mistakes–the date of original conviction and the offense of conviction. U*nited States v. Gregg*, 435 F. App'x 209, 216 (4th Cir. 2011). "Based on these defects, the district court concluded that the government's information filed under § 851 was of questionable validity." *Id.*

[6] The Fourth Circuit held "that Gregg's original sentence was not affected by the mistakes in the government's information, and that there was no 'clear error' justifying a 'corrected' sentencing in this case." *Gregg*, 435 F. App'x at 217.

[7] The Court granted the United States' request for an extension of time to file its response. (*See* ECF Nos. 79, 80.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255 ("§ 2255"), a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962). A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *United States v. King*, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999). A *pro se* petitioner is held to a less exacting standard than an attorney in drafting his petition. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Therefore, the Court generously interprets Gregg's factual allegations and legal contentions.

## III. DISCUSSION

(1) Ground One: Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of *Strickland*, the performance prong, requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions

4

that counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). The second prong of *Strickland*, the prejudice prong, requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If it is clear the petitioner has failed to satisfy either prong of the *Strickland* standard, a court need not inquire into whether he satisfied the other. *Id.* at 697.

In this first ground for relief, Gregg argues that trial counsel was ineffective "when he failed to clarify for the jury that the defendant could not be convicted of conspiracy, if his only co-conspirator was an undercover government agent." Counsel's alleged deficient performance encompassed the failure to request a "Lewis" instruction, *see United States v. Lewis*, 53 F.3d 29 (4th Cir. 1995),[8] as well as failure to raise this legal impossibility during opening and closing arguments, cross-examination, and at a sidebar conference when the court entertained the jury's question.[9]

During the trial, the Government called April Brooks ("Brooks") to the stand. (*See* Trial Tr. at 100.)[10] In addition to buying cocaine from Gregg on a daily basis, Brooks would "watch the door" for Gregg at the hotels where he was selling drugs. (*Id.* at 102:19–23; 104:10–15.) Brooks explained that "watching the door" meant that "[i]f someone came to the door [she] would look out the door and see who it was. If [she] knew them, [she] would let them in. If [she] didn't, [she] wouldn't." (*Id.* at 104:18–20.) Gregg needed someone to "watch the door" because he was busy selling crack cocaine. (*Id.* at 104:24–105:2.) In its closing argument, the Government

---

[8] Such instruction, Gregg contends, would include the following: "[I]f you find that . . . [defendant] . . . did not have an agreement with anyone other than . . . [an undercover agent] . . ., you must find him not guilty." (Mem. in Supp. of § 2255 Mot. at 11.)
[9] Gregg is correct in his general assertion that an individual who acts as a government agent and enters into a conspiracy as an informer cannot be a co-conspirator. *See United States v. Lewis*, 53 F.3d 29, 33 (4th Cir. 1995); *United States v. Hayes*, 775 F.2d 1279, 1283 (4th Cir. 1985), *United States v. Chase*, 372 F.2d 453, 459 (4th Cir. 1967). However, Gregg's argument fails for the reasons set forth below.
[10] All references to the trial transcript refer to the October 29, 2009 trial. (ECF No. 67.)

expressly noted that Brooks "is a co-conspirator. She and the defendant have come to an understanding to distribute cocaine. She is helping him distribute crack cocaine." (*Id.* at 223:18–21.)

Additionally, the Government called Phylicia Lewis ("Lewis") during their case-in-chief. (*See id.* at 124.) Lewis testified to renting rooms with Gregg at the Deluxe Inn for the purpose of selling drugs. (*Id.* at 127:18–23.) She further testified that Gregg brokered cocaine deals for her on three different occasions. (*Id.* at 128:22–25.) The Government argued in closing that Lewis was also a co-conspirator. (*See id.* at 229:12–13.)

The Government also called Alfredo Capetillo Reyna ("Reyna") to the stand. (*Id.* at 145.) Reyna was an informant for law enforcement. (*Id.* at 145:24–146:1.) He was instructed to make a controlled purchase of cocaine base from Gregg at the Deluxe Inn Motel on May 12, 2009. (*Id.* at 146:6–9.) However, because of a misunderstanding, the drug transaction was not completed. (*See id.* at 146:17–147:17.) The Government played the video of the attempted drug transaction for the jury. (*See id.* at 148:7–9.) In closing, the Government highlighted the video as a piece of evidence where "we get to peel back the curtain and look in and see what [Gregg] is doing." (*Id.* at 227:14–15.) The Government specifically focused the jury's attention on what Gregg said in that video– "I run this place. I sell. I run this place." (*Id.* at 228:16.)

In his § 2255 Motion, Gregg slyly chooses an array of quotes from the trial transcript to conclude that the Government described the video as the "crown jewel" demonstrating that Gregg conspired with others. (*See* Mem. in Supp. of § 2255 Mot. at 1.) He argues that counsel was ineffective in failing to inform the jury that Gregg could not conspire with Reyna because Reyna was a government informant. (*Id.* at 2.) However, as demonstrated by the recitation of the trial transcript above, the Government never presented evidence nor argued that Gregg conspired with a government informant. Rather, the Government argued that Gregg conspired with Brooks and Lewis, and only used the video of the attempted drug deal with Reyna as evidence of what Gregg was really doing during the relevant time period. Rockecharlie's affidavit

confirms this conclusion. "Based on a review of the government's discovery, conversations with AUSA Young, evidence presented at trial by the government, and the arguments by the government at trial, there was never any allegation by the government that Mr. Gregg conspired with any government informant." (Gov'ts Resp., attachment B, at ¶ 9.) Rockecharlie accordingly did not advise Gregg "of the impossibility of conspiring with a government agent." (*Id.*)

Gregg further contends that the question posed to the Court during jury deliberations demonstrates that the jury convicted him based on the attempted drug deal with Reyna. However, again, Gregg's argument is unavailing.

During deliberations, the jury asked the Court the following question with respect to "the defendant knowingly and voluntarily became a part of this conspiracy": "Does this indicate the defendant acted out the conspiracy in question?" (Trial Tr. at 276:20–277:1.) After requesting clarification from the jury, the foreman asked the judge: "Did he actually go through with what they were talking about doing." (*Id.* at 277:16–17.) The Court responded:

> "The government is not required to prove that the parties or the members of the conspiracy were successful in achieving any or all of the objects of the agreement." In this case, of course, the allegation is that the defendant was involved in a conspiracy to distribute and to possess with intent to distribute cocaine base. And the evidence, if you accept it, is that he actually sold cocaine base or possessed it with intent to distribute. So it is not required that the conspiracy be successful or that the object of the conspiracy be borne out. But, of course, in this case you have to deal with the evidence that you have before you. Again, you can reject that evidence. But the evidence is there and you either credit it or you don't. And I guess that's all I can tell you.

(*Id.* at 277:20–278:8.) At a sidebar conference before the jury was dismissed, defense counsel advised the Court that he believed "the question goes to did he accomplish the 50 grams or more as alleged in the indictment. I would ask you to tell them that the government has to show that he conspired with others to do more than 50 grams as alleged in the indictment." (*Id.* at 278:13–17.) However, the Court did not see that as the question. (*Id.* at 278:19.)

In his affidavit, Rockecharlie stated that he "did not interpret [the jury's] question in a way that would suggest that Tony Gregg was accused of conspiring with a government agent.

7

Therefore, [Rockecharlie] did not ask for an instruction on that issue." (Gov'ts Resp., attachment B, at ¶ 11.)

With these facts in mind, the Court finds Gregg's instant arguments unavailing. Because the Government never argued that Gregg conspired with Reyna, nor did the jury question implicate the attempted drug transaction with Reyna, counsel's performance did not fall below an objective standard of reasonableness when counsel did not advise the jury of the legal impossibility of conspiring with a government informant. *See Lewis*, 609 F.3d at 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). Moreover, Gregg cannot demonstrate that he was prejudiced by his counsel's performance. *Strickland*, 466 U.S. at 687. Gregg admits in his § 2255 Motion that "[i]f believed, the testimony of any of the four women describing numerous completed transactions . . . would have been sufficient to convict." (Mem. in Supp. of § 2255 Mot. at 13.) This conclusion is amply confirmed by the Fourth Circuit's opinion as well, which noted that "[t]he government presented substantial evidence to permit a jury to convict Gregg of the crime charged." *Gregg*, 435 F. App'x at 215. Thus, regardless of counsel seeking a jury instruction or making an argument regarding Reyna, the result of the proceeding would not have been different. *Strickland*, 466 U.S. at 694. For those reasons, Gregg's first ground for relief is DENIED.

(2) <u>Ground Two: Fair Sentencing Act of 2010 & *Dorsey v. United States*, 132 S. Ct. 2321 (2012)</u>

As to his second ground for relief, Gregg argues that he is entitled to resentencing pursuant to *Dorsey v. United States*, 132 S. Ct. 2312 (2012), utilizing the more lenient treatment of threshold drug quantities under the Fair Sentencing Act of 2010.

The Fair Sentencing Act of 2010 ("FSA" or the "Act") was signed into law on August 3, 2010. *Dorsey*, 132 S. Ct. at 2326. The FSA raised the amount of cocaine base required to trigger the statutory minimum sentences under 21 U.S.C. § 841 (from 5 grams to 28 grams to trigger the 5 year mandatory minimum sentence, and from 50 grams to 280 grams to trigger the 10 year

mandatory minimum sentence). The Supreme Court in *Dorsey* addressed the question of "whether the Act's more lenient penalty provisions apply to offenders who committed a crack cocaine crime before August 3, 2010, but were not sentenced until after August 3." *Id.* The Court answered in the affirmative, holding "that the new, more lenient mandatory minimum provisions do apply to those pre-Act offenders." *Id.* In other words, "lower mandatory minimums [do] apply to the post-Act sentencing of pre-Act offenders." *Id.* at 2335.

Here, Gregg was arrested on May 14, 2009 for crimes committed between March and May 2009. He was originally sentenced to life on January 27, 2010, and then resentenced to 300 months' imprisonment on February 11, 2010–before the FSA took effect. Gregg argues, however, that because he was subsequently resentenced to life on July 15, 2011 pursuant to the Fourth Circuit's remand, "he was sentenced after August 3, 2010 and should have received the benefit of the post Dorsey law." (Reply Mem. at II-3.) Regardless of whether *Dorsey* applies to the instant case,[11] Gregg's argument is ultimately unavailing.

At trial, FBI Special Agent Scott Umphlett ("Umphlett") testified regarding the *Mirandized* confession made by Gregg after he was arrested. (*See* Trial Tr. at 168:10–15.) Gregg confessed that he had been selling crack cocaine since the end of March. (*Id.* at 172:7–10.) Gregg specifically admitted to selling several eightballs, or 3.5 grams of crack cocaine, a day. (*Id.* at 172:11–17.) In giving a "very, very conservative" estimate, Umphlett calculated the total amount of crack cocaine that Gregg sold between March 24, 2009 and May 12, 2009 to be 514.5 grams of crack cocaine. (*Id.* at 173:8; 174:1.)[12]

Because the Government proved that Gregg sold more than 280 grams of cocaine base, *Dorsey*'s holding is irrelevant. Gregg would be subject to the same mandatory minimum

---

[11] The Government argues that *Dorsey* does not apply to petitioner's case because his offense date and sentencing dates occurred prior to the August 3, 2010 enactment of the FSA. (Gov'ts Resp. at 9.)

[12] Umphlett calculated the total amount of crack cocaine sold as follows: Gregg admitted to selling "several" eightballs a day. (Trial Tr. at 172:11–13.) "Several" is defined as more than two, so Umphlett used the number three. (*Id.* at 173:6–9.) An eightball is 3.5 grams. (*Id.* at 173:5.) So, three multiplied by 3.5 grams equals 10.5 grams of crack cocaine sold per day. (*Id.* at 173:9.) Umphlett then multiplied 10.5 grams by 49 days (March 24 through May 12) for a total of 514.5 grams of crack cocaine. (*Id.* at 173:15–174:1.)

sentence under 21 U.S.C. § 841(a) as amended by the FSA that he was subject to prior to the FSA. For that reason, Gregg's second ground for relief must too be DENIED.

### IV.     EVIDENTIARY HEARING

Gregg requests an evidentiary hearing "because there are likely to be facts that are not readily ascertainable from the record which, if found to be true, will result in the relief requested." Generally, an evidentiary hearing is required under § 2255 unless it is clear from the pleadings, files, and records that a movant is not entitled to relief. *United States v. Witherspoon,* 231 F.3d 923, 925–27 (4th Cir. 2000); *Raines v. United States,* 423 F.2d 526, 529–30 (4th Cir. 1970). The district court must hold an evidentiary hearing when the "movant presents a colorable . . . claim showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue." *United States v. Evans*, 429 F. App'x 213, 214 (4th Cir. 2011) (citations omitted). Whether an evidentiary hearing is necessary is within the discretion of the district court. *Raines,* 423 F.2d at 530. Based on a thorough evaluation of the pleadings and records, it is clear that Gregg is not entitled to relief. Thus there is no need for an evidentiary hearing.

### V.     CERTIFICATE OF APPEALABILITY

A district court that enters a final order denying a § 2255 motion must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Proceedings. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El*, 537 U.S. at 336–38 (citing *Slack*, 529 U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Gregg is entitled to further consideration of his claims. Accordingly, a certificate of appealability is DENIED.

## VI.    CONCLUSION

For the foregoing reasons, the Court hereby DENIES the § 2255 Motion and DENIES a certificate of appealability.

Let the Clerk send a copy of this Memorandum Opinion to the *pro se* Petitioner and all counsel of record.

An appropriate Order shall issue.

>  _____/s/_____
>  James R. Spencer
>  Senior U. S. District Judge

ENTERED this __7th___ day of July 2015.